UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROSA ELBA DE PAULINO, *as Parent and Natural Guardian of R.P.*, ROSA ELBA DE PAULINO, *Individually*, CEFRINO PAULINO, *as Parent and Natural Guardian of R.P.*, CEFRINO PAULINO, *Individually*, MARILYN BECKFORD, *as Parent and Natural Guardian of M.B.*, MARILYN BECKFORD, *Individually*, LYNN B CHAPERON, *as Parent and Natural Guardian of A.C.*, LYNN B CHAPERON, *Individually*, NEYSHA CRUZ, *as Parent and Natural Guardian of O.F.*, NEYSHA CRUZ, *Individually*, DOROTHY NESKE, *as Parent and Natural Guardian of A.N.*, DOROTHY NESKE, *Individually*, CHRISTOPHER NESKE, *as Parent and Natural Guardian of A.N.*, CHRISTOPHER NESKE, *Individually*, MARINA PEREZ (BURGOS PARRA), *as Parent and Natural Guardian of C.P.*, MARINA PEREZ (BURGOS PARRA), *Individually*, MARIA HILDAGO, *as Parent and Natural Guardian of L.S.*, MARIA HILDAGO, *Individually*, ABUNDIO SANCHEZ, *as Parent and Natural Guardian of L.S.*, ABUNDIO SANCHEZ, *Individually*, KELLY TOBUCK, *as Parent and Natural Guardian of K.T.*, KELLY TOBUCK, *Individually*, CAROLYN MASON, *as Parent and Natural Guardian of A.D.*, CAROLYN MASON, *Individually*, MARIA NAVARRO-CARILLO, *as Parent and Natural Guardian of M.G.*, MARIA NAVARRO-CARILLO, *Individually*, JOSE GARZON, *as Parent and Natural Guardian of M.G.*, JOSE GARZON, *Individually*, ANDREA PHILLIPS, *as Parent and Natural Guardian of S.H.*, ANDREA PHILLIPS, *Individually*, PAUL HINTON, *as Parent and Natural Guardian of S.H.*, PAUL HINTON, *Individually*, ROSA ZAYAS, *as Parent and Natural Guardian of R.Z.*, ROSA ZAYAS, *Individually*, EDWIN ZAYAS, *as Parent and Natural Guardian of R.Z.*, EDWIN ZAYAS, *Individually*,

Plaintiffs,

-v-

NEW YORK CITY DEPARTMENT OF EDUCATION, DAVID C BANKS, *in his official capacity as Chancellor of New York City Department of Education*,

Defendants.

22 Civ. 1865 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Plaintiffs Rosa Elba de Paulino, Cefrino Paulino, Marilyn Beckford, Lynn B. Chaperon, Neysha Cruz, Dorothy Neske, Christopher Neske, Marina Perez (Burgos Parra), Maria Hildago, Abundio Sanchez, Kelly Tobuck, Carolyn Mason, Maria Navarro-Carillo, Jose Garzon, Andrea Phillips, Paul Hinton, Rosa Zayas, and Edwin Zayas (collectively, "plaintiffs"), individually and on behalf of their respective children (the "students"), move for injunctive relief against defendants New York City Department of Education (the "DOE") and David C. Banks, in his official capacity as Chancellor of the DOE (collectively, "defendants").  Dkt. 10 ("Compl.") ¶ 141.  Plaintiffs allege that their children are students with disabilities who are entitled under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(j), and regulations promulgated thereunder, and New York Education Law § 4404(4)(a), to remain in their educational placements during the pendency of administrative and judicial proceedings regarding the adequacy of their education.  *See id.* ¶¶ 7–139.  Plaintiffs move for an injunctive order requiring the DOE to immediately implement the students' pendency orders by fully funding the students' tuition, transportation, and other services at the International Institute for the Brain ("iBRAIN") for the 2021–2022 extended school year.[1]  *Id.* ¶ 141; Dkt. 18 ("Mot.") at 1.  Since plaintiffs moved for injunctive relief, the DOE has funded, to varying degrees for each student, the pendency placements at issue.  *See* Dkts. 33, 37, 39.

---

[1] The Court notes—as has been noted by the Second Circuit and other judges in this District— that this case and similar cases on behalf of students with disabilities was brought by the Brain Injury Rights Group, Ltd. ("BIRG").  BIRG was founded by the same individual who founded iBRAIN and has brought numerous cases on behalf of students seeking public funding for students at iBRAIN.  *Cf., e.g.*, *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 528– 29 (2d Cir. 2020) (noting "unusual set of facts" in cases brought by BIRG on behalf of students at iBRAIN); *Ferreira v. N.Y.C. Dep't of Educ.*, Nos. 19 Civ. 2937, 19 Civ. 8519 (JMF), 2020 WL 1158532, at *2 n.1 (S.D.N.Y. Mar. 6, 2020) (describing circumstances giving rise to certain cases brought by BIRG as "curious," though "ultimately irrelevant" to court's decision).

For the following reasons, the Court denies plaintiffs' motion.  As to the remaining costs claimed by plaintiffs, the Court directs the parties to continue conferring in good faith and file, by February 8, 2023, a joint status update in accordance with this opinion and order.

## I.    Background[2]

### A.    Factual Background

The underlying allegations for each of the 12 students—R.P., M.B., A.C., O.F., A.N., C.P., L.S., K.T., A.D., M.G., S.H., and R.Z.—are similar, and thus are summarized collectively.

Each student is a minor[3] and a resident of New York City with an acquired brain injury or brain-based disorder that qualifies as a disability under 20 U.S.C. § 1401(3).  *See* Compl. ¶¶ 8, 10–11, 13 (R.P.); *id.* ¶¶ 19, 21–22, 24 (M.B.); *id.* ¶¶ 30, 32–33, 35 (A.C.); *id.* ¶¶ 41, 43–44, 46 (O.F.); *id.* ¶¶ 52, 54–55, 57 (A.N.); *id.* ¶¶ 63, 65–66, 68 (C.P.); *id.* ¶¶ 74, 76–77, 80 (L.S.); *id.* ¶¶ 86, 88–89, 91 (K.T.); *id.* ¶¶ 97, 99–100, 102 (A.D.); *id.* ¶¶ 108, 110–11, 113 (M.G.); *id.* ¶¶ 119, 121–22, 124 (S.H.); *id.* ¶¶ 130, 132–33, 135 (R.Z.).  At some point in the summer or fall of 2021, the parents and/or natural guardians of each student initiated due process complaints and sought pendency placements for the students at iBRAIN for the duration of the proceedings. *See id.* ¶ 15; (R.P.); *id.* ¶ 26 (M.B.); *id.* ¶ 37 (A.C.); *id.* ¶ 48 (O.F.); *id.* ¶ 59 (A.N.); *id.* ¶ 70 (C.P.); *id.* ¶ 82 (L.S.); *id.* ¶ 93 (K.T.); *id.* ¶ 104 (A.D.); *id.* ¶ 115 (M.G.); *id.* ¶ 126 (S.H.); *id.* ¶ 137 (R.Z.).  In the cases of nine of the students, an impartial hearing officer ("IHO") issued an order on pendency, and, in the cases of students M.G., S.H., and R.Z, the findings of fact and decision ("FOFD") in the case "established iBRAIN as the basis for pendency" for the 2021–

---

[2] The Court draws its account of the underlying facts of this case from plaintiffs' Complaint, Dkt. 10 ("Compl."), and the attached exhibits.

[3] Plaintiffs characterize all students as minors; however, O.F., C.P., K.T., and S.H. were 18 years old or older at the start of the 2021–2022 extended school year.  Compl. ¶¶ 42, 64, 87, 121.

2022 extended school year.  *See id.* ¶ 16; (R.P.); *id.* ¶ 27 (M.B.); *id.* ¶ 38 (A.C.); *id.* ¶ 49 (O.F.);

*id.* ¶ 60 (A.N.); *id.* ¶ 71 (C.P.); *id.* ¶ 83 (L.S.); *id.* ¶ 94 (K.T.); *id.* ¶ 105 (A.D.); *id.* ¶ 116 (M.G.);

*id.* ¶ 127 (S.H.); *id.* ¶ 138 (R.Z.).

In their Complaint, dated March 4, 2022, plaintiffs alleged that the DOE failed to fully

fund the students' pendency placements for the 2021–2022 extended school year.  *See id.* ¶ 17

(R.P.); *id.* ¶ 28 (M.B.); *id.* ¶ 39 (A.C.); *id.* ¶ 50 (O.F.); *id.* ¶ 61 (A.N.); *id.* ¶ 72 (C.P.); *id.* ¶ 84

(L.S.); *id.* ¶ 95 (K.T.); *id.* ¶ 106 (A.D.); *id.* ¶ 117 (M.G.); *id.* ¶ 128 (S.H.); *id.* ¶ 139 (R.Z.); *see

also id.* ¶ 140.  The parties have since filed three sets of updates as to the amount of funding

outstanding.  *See* Dkts. 31, 33, 37, 39.  In the latest, the parties represented that the placements

for R.P. and C.P. have been fully funded, and defendants represent that the only outstanding

costs for M.B. have been reimbursed.  *See* Dkt. 39.  As to the remaining nine students,

defendants assert that the claimed costs for A.C., O.F., A.N., L.S., K.T., A.D., M.G., and R.Z.

will be reimbursed upon submission of in-person attendance records and/or invoices, and that the

allegedly overdue tuition for S.H. is not subject to reimbursement.  *See id.*  In particular, the

parties set forth the following positions as to the amount owed to each student:

| Student | Plaintiffs' Position | Defendants' Position |
| --- | --- | --- |
| **R.P.** | *No outstanding funding* | *No outstanding funding* |
| **M.B.** | $7,040 in transportation costs overdue | $7,040 in transportation costs reimbursed as of December 7, 2022 |
| **A.C.** | $24,319.62 in transportation costs overdue | $24,319.62 in transportation costs to be reimbursed upon receipt of in-person attendance records, per pertinent FOFD |
| **O.F.** | $22,790 in transportation costs overdue | $22,790 in transportation costs to be reimbursed upon receipt of in-person |

| | | |
|---|---|---|
| | | attendance records, per pertinent pendency order |
| | $6,864 in nursing costs overdue | All nursing costs reimbursed as of October 21, 2022 |
| **A.N.** | $13,500 in transportation costs overdue | Any outstanding transportation costs to be reimbursed upon receipt of invoices |
| | $857.34 in tuition overdue | $957.34 in claimed tuition not subject to reimbursement because pertinent due process complaint was filed after close of business on July 7, 2021 |
| **C.P.** | *No outstanding funding* | *No outstanding funding* |
| **L.S.** | $49,980 in transportation costs overdue | $49,980 in transportation costs to be reimbursed upon receipt of in-person attendance records and invoices, per pertinent State Review Officer ("SRO") decision |
| | $217,360 in nursing costs overdue | $220,792 in nursing costs to be reimbursed upon receipt of invoices |
| **K.T.** | $41,250 in transportation costs overdue | $41,250 in transportation costs to be reimbursed upon receipt of in-person attendance records, per pertinent FOFD |
| | $1,654.23 in tuition overdue | $1,754.23 in tuition to be reimbursed upon receipt of in-person attendance records, per pertinent FOFD |
| **A.D.** | $24,319.62 in transportation costs overdue | $24,319.62 in transportation costs to be reimbursed upon receipt of in-person attendance records, per pertinent FOFD |
| **M.G.** | $179,628 in transportation costs overdue | Transportation costs through April 10, 2022 to be reimbursed without further documentation, and transportation costs after April 10, 2022 to be reimbursed upon receipt of |

| | | in-person attendance records, per pertinent FOFD |
|---|---|---|
| **S.H.** | $8,968.80 in tuition overdue | No amount overdue, as S.H. is not entitled to reimbursement of music therapy based on education plan, affidavits submitted at impartial hearing, and hearing transcript |
| **R.Z.** | $93,740 in transportation costs overdue | No position on transportation costs |
| | $254,836 in tuition overdue | $137,519.22 in tuition reimbursed as of December 3, 2022 |
| | $200,720 in nursing costs overdue | No position on nursing costs |

*See id.*

**B.     Procedural History**

On March 4, 2022, plaintiffs filed the Complaint, seeking injunctive relief and damages. Dkt. 1.  That day, plaintiffs also moved for a preliminary injunction to require the DOE to immediately fund the students' pendency placements for the 2021–2022 extended school year. Dkts. 4, 5.  On March 10, 2022, plaintiffs refiled the Complaint to correct a filing error, Dkt. 10, and the Court instructed plaintiffs to serve defendants, who had not yet appeared, by March 18, 2022, Dkt. 11.  On March 14, 2022, plaintiffs served defendants.  Dkt. 12.

On April 4, 2022, the Court granted defendants' request, consented to by plaintiffs, for 45-day extensions of their deadlines to respond to the Complaint and motion for a preliminary injunction.  Dkt. 14.  On May 4, 2022, the Court granted defendants' second request, consented to by plaintiffs, for a one-week extension of the deadline to respond to the motion.  Dkt. 16.  On May 6, 2022, plaintiffs re-filed their motion for a preliminary injunction.  Dkts. 17, 18.  On May 12, 2022, defendants opposed the motion and filed the declaration of Sapna Kapoor.  Dkts. 19

("Decl."), 20 ("Opp.").  On May 18, 2022, the Court granted defendants' request to extend their time to respond to the Complaint.  Dkt. 22.  On May 19, 2022, plaintiffs filed their reply to defendants' opposition.  Dkt. 23 ("Reply").  On June 30, 2022, defendants filed their answer. Dkt. 24.

On October 13, 2022, the Court directed the parties to submit a joint status update and define the relief presently sought.  Dkt. 30.  On October 17, 2022, the parties submitted a joint letter, in which plaintiffs set forth their position as to the amount of funds outstanding.  Dkt. 31. On October 24, 2022, defendants filed a letter setting forth their position as to the amount of funds outstanding.  Dkt. 33.  Because many payments outlined by defendants were recently processed and/or the subject of ongoing investigation, the Court directed the parties to submit another joint status update.  Dkt. 34.  On November 7, 2022, the parties requested, and the Court granted, an extension of their deadline to submit that update.  Dkts. 35, 36.  On November 30, 2022, the parties submitted a second status update outlining their positions as to the amount of funds outstanding.  *See* Dkt. 37.  On December 7, 2022, the parties submitted their final joint status update as to the reimbursements in dispute.  Dkt. 39.

## II.    Discussion

Plaintiffs' motion raises two questions: (1) whether plaintiffs are entitled to injunctive relief as to the funding of the students' pendency placements for the 2021–2022 extended school year; and (2) if the Court determines that they are entitled to injunctive relief, whether the Court should order the immediate reimbursement of all outstanding costs identified by plaintiffs.  The Court finds, as to the first question, that plaintiffs are not entitled to injunctive relief because they have failed to demonstrate the requisite irreparable harm.  Accordingly, the Court does not reach the second question, and denies plaintiffs' application for a preliminary injunction.

A.      **Applicable Legal Principles**

1.      **Standards Governing Preliminary Injunctions**

The decision to grant or deny a preliminary injunction rests in the district court's sound discretion. *See Am. Exp. Fin. Advisors Inc. v. Thorley*, 147 F.3d 229, 231 (2d Cir. 1998). A preliminary injunction is "an extraordinary remedy that should not be granted as a routine matter." *See JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 80 (2d Cir. 1990). To justify such relief, a movant must typically demonstrate: (1) irreparable harm absent injunctive relief; (2) either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor; and (3) that the public's interest weighs in favor of granting an injunction. *See, e.g.*, *Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir. 2010). "[A] showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990) (citation omitted).

2.      **Review of Challenges to Pendency Placements**

"The IDEA authorizes the disbursement of federal funds to [s]tates that develop appropriate plans to, among other things, provide a free and appropriate public education ("FAPE") to children with disabilities." *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 525 (2d Cir. 2020) (footnotes omitted). "To provide a FAPE to each student with a disability, a school district must develop an IEP [individualized education program] that is 'reasonably calculated to enable the child to receive educational benefits.'" *Id.* (quoting *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 151 (2d Cir. 2014)). Parents who wish to challenge the adequacy of their child's IEP can avail themselves of New York's two-tier system of administrative review: first, by filing an administrative due process complaint and requesting a hearing before an IHO; and second, by appealing that officer's decision to a state review officer

8

("SRO").  *Id.* at 526; *see also* 20 U.S.C. § 1415(f)–(g); N.Y. Educ. Law § 4404(1)–(2).  The

parent may pursue judicial review of the SRO's decision in a state or federal trial court.  *Ventura*,

959 F.3d at 526; *see also* 20 U.S.C. § 1415(i)(2)(A); N.Y. Educ. Law § 4404(3).

      Under the pendency, or "stay-put," provision of the IDEA, a child protected by the IDEA

is to remain, at public expense, in his or her "then-current educational placement" during the

adjudication of proceedings conducted pursuant to the IDEA.  20 U.S.C. § 1415(j); *see Ventura*,

959 F.3d at 526, 532.  An action, like this one, that alleges a violation of the pendency provision

falls under one of the exceptions to the IDEA's requirement for the exhaustion of administrative

remedies before filing suit in federal court.  *See Ventura*, 959 F.3d at 531.  "[W]here the IDEA's

stay-put provision is implicated, the provision triggers the applicability of an automatic

injunction designed to maintain the child's educational status quo while the parties' IEP dispute

is being resolved."  *Id.* at 529 (citing cases).

      **B.**    **Analysis**

      Plaintiffs move for injunctive relief on the grounds that the DOE has failed to fully fund

the students' pendency placements at iBRAIN for the 2021–2022 extended school year.  Mot. at

2–3.  They argue that pendency is a procedural right that entitles the students to "immediate

interim relief," *id.* at 4 (quoting *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195,

200 (2d Cir. 2002)), and that the violation of this procedural right constitutes an injury-in-fact

sufficient to establish their standing, *id.* at 5–6.  Plaintiffs contend that the traditional preliminary

injunction standard does not apply here because the stay-put provision serves as an "automatic"

injunction, allowing for a presumption of irreparable harm.  *Id.* at 7–8; *see also id.* at 9–10.  In

their view, the maintenance of the students' placements at iBRAIN and the funding for those

placements "go hand-in-hand."  Reply at 2; *see also id.* at 5–6.

Even under the traditional preliminary injunction standard, plaintiffs assert, they are entitled to injunctive relief.  First, they argue that they have a likelihood of success on the merits, given that the students are entitled to pendency as a matter of law and plaintiffs filed timely due process complaints that triggered the DOE's obligation to fund the students' pendency placements.  *See* Mot. at 11.  Second, they argue that they will suffer irreparable harm in the form of (1) continued violation of their pendency procedural rights, and (2) financial repercussions from the continued violations.  *See id.* at 11–12.  Third, they argue that the balance of equities favors injunctive relief, as they waited nearly seven months after filing their administrative due process complaints to file this suit and communicated with defendants in good faith to resolve their claims.  *See id.* at 12.  Fourth, they argue that an injunction would be in the public interest.  *See id.* at 12–13.  They dispute defendants' assertion that reimbursement for services such as transportation is contingent upon the provision of invoices and attendance records.  *See* Reply at 3–4.

In opposition, defendants argue that plaintiffs' motion is moot to the extent that the DOE has implemented certain students' pendency orders, and otherwise fails because plaintiffs have not demonstrated any threat to the students' educational placements.  Opp. at 1, 4.  Defendants emphasize that plaintiffs have not alleged that the students were denied services at any point during the 2021–2022 extended school year.  *See id.* at 6.  Defendants acknowledge their obligation to fund the students' pendency placements and state that they will reimburse the costs of tuition and certain services, including transportation, upon receipt of invoices and/or in-person attendance records.  *See, e.g.*, *id.* at 2, 4; Decl. ¶ 9.

The Court finds that defendants have the better of the argument on this motion, and that plaintiffs have failed to demonstrate their entitlement to injunctive relief.  *Abrams v. Carranza*, a

recent case in this District with nearly identical facts, is on point.  No. 20 Civ. 5085 (JPO), 2020
WL 4504685 (S.D.N.Y. Aug. 5, 2020).  There, the plaintiffs, on behalf of students with
pendency placements at iBRAIN, moved for the Court to direct the DOE to immediately fund the
students' placements.  *Id.* at *1.  Judge Oetken found that the plaintiffs were not entitled to an
"automatic injunction" under the IDEA because they had failed to prove a "threat to Students'
placements" at iBRAIN.  *Id.*; *see also id.* (noting that plaintiff-cited authorities for application of
automatic injunction all "involve[d] instances in which *placement* is threatened" and "raise[d]
the issue of *funding* only when it directly affect[ed] placement").  Moreover, because the parties
appeared to dispute only the *payment* of the pendency placements—including whether the
plaintiffs were required to submit certain documents in order to be reimbursed—he found that
the plaintiffs also failed to meet the standard for a traditional preliminary injunction, as "such a
dispute does not implicate irreparable harm, at least where . . . there is no imminent threat to the
educational services themselves."  *Id.*  Judge Oetken denied the plaintiffs' later motion for
reconsideration.  *See Abrams v. Carranza*, No. 20 Civ. 5085 (JPO), 2020 WL 6048785, at *2
(S.D.N.Y. Oct. 13, 2020), *aff'd sub nom.*, *Abrams v. Porter*, No. 20-3899, 2021 WL 5829762 (2d
Cir. Dec. 9, 2021) (summary order) ("Affirmance").

      The Second Circuit affirmed the ruling in *Abrams*, by summary order.  The Circuit
acknowledged that "implicit in the maintenance of the status quo is the requirement that a school
district continue to finance an educational placement made by the agency and consented to by
the parent before the parent requested a due process hearing."  Affirmance at *2 (citation
omitted).  But the Circuit found this principle inapplicable to the bid for injunctive relief sought
in *Abrams*.  It affirmed the district court's denial of an automatic injunction "given that both
sides agreed that there was no risk of the students losing their pendency placement" and "the

dispute related to efforts by the plaintiffs to obtain payment for tuition and supporting services for a portion of the prior school year." *Id.* The Circuit distinguished *Araujo v. New York City Department of Education*, No. 20 Civ. 7032 (LGS), 2020 WL 5701828 (S.D.N.Y. Sept. 24, 2020), which involved students with pendency placements that DOE had not yet agreed to fund. *Id*. For the same reasons, the Circuit affirmed the district court's denial of relief under the traditional preliminary injunction standard. It noted that evidence showed "that the students' placements for the then-ongoing 2020–2021 school year were not at risk." *Id.*

*Abrams*'s logic carries the day here. The pendency provision mandates only that a student "*remain* in [his or her] then-current educational placement" during proceedings under the IDEA. 20 U.S.C. § 1415(j) (emphasis added). The record here does not reveal any risk to the students' placements. Plaintiffs have cited certain costs of the students' placements that have not been reimbursed, and defendants have acknowledged their duty to cover these costs. But plaintiffs have not demonstrated that the students' ability to "remain" in those placements has been put in any danger as a result of the timing of the reimbursements. Strikingly, plaintiffs have not submitted any evidence that any of the students was removed, or faced a threat of removal, from their pendency placements at any point during the 2021–2022 extended school year, which ended months ago.[4] *Cf. Abrams*, 2020 WL 6048785, at *2 (finding conclusion that disputes over fees, in the absence of threat of displacement, did not constitute irreparable harm to be "bolstered by the fact[] that these funds [were] for a school year that ended months ago"). Accordingly, plaintiffs are not entitled to an automatic injunction directing funding of the pendency placements. *See e.g.*, Affirmance at *2; *Mendez v. Banks*, No. 22 Civ. 8397 (MKV), 2022 WL

---

[4] After moving for injunctive relief in March 2022, plaintiffs consented to defendants' requests for a total of 52 additional days to respond to the motion. *See* Dkts. 13, 15. This reinforces that the students' ability to remain in their placements at iBRAIN was not at risk.

6807537, at *2 (S.D.N.Y. Oct. 11, 2022) (automatic injunction unwarranted where plaintiffs "failed to allege that the delay in disbursing funds will affect the students' educational placements in any way"); *cf. Cohen v. N.Y.C. Dep't of Educ.*, No. 18 Civ. 11100 (JMF), 2018 WL 6528241, at *2 (S.D.N.Y. Dec. 12, 2018) (plaintiffs failed to prove entitlement to automatic injunction or traditional preliminary injunction based on alleged failure to fund pendency placement where there was "no meaningful threat that [the] student will be removed from his pendency placement").

Plaintiffs argue that the funding of pendency orders goes "hand-in-hand" with the maintenance of the placements. *E.g.*, Reply at 2. To be sure, the DOE's failure to timely fund the students' pendency placements is dismaying. It should not take the filing of a lawsuit and orders by a Court directing status reports on payments to catalyze an agency to make meaningful progress on its conceded reimbursement obligations to plaintiffs. Nonetheless, this case does not supply a basis to depart from the sound reasoning in *Abrams*—or to hold that the pendency provision inherently requires immediate funding of a student's placement, or a court order so directing. As Judge Oetken put it:

> This Court does not question . . . that cutting off funding for a student's agreed-upon placement violates that student's pendency rights under the IDEA. Rather, this Court draws a clear distinction between having pendency funds completely cut off and undertaking an administrative process—including providing information—to receive that funding. Plaintiffs have a right to the IDEA-guaranteed pendency funding; they do not, however, have a right to a blank check.

*Abrams*, 2020 WL 6048785, at *2 (citations omitted).

Here, the DOE has not challenged the legitimacy of the students' pendency placements or denied its obligation to fund those placements. The DOE asks only that plaintiffs provide certain information before reimbursing the outstanding costs. The Court does not have occasion to resolve whether and to what extent such information is mandated by the students' pendency

orders or FOFDs.  Yet this type of administrative prerequisite to receiving funding—lacking as it does any apparent impact on the underlying placement—does not constitute a violation of the pendency provision so as to trigger an automatic injunction.

Plaintiffs' claims likewise fail under the traditional preliminary injunction standard for a simple reason: they have not demonstrated a threat of irreparable harm.  They assert that, without the requested relief, they will suffer harm in the form of continued violations of the students' rights under the pendency provision and the "financial repercussions of the continued violations."  Mot. at 11.  But, as discussed, plaintiffs have not shown that the students' pendency rights were, in fact, violated, let alone that the ostensibly tardy reimbursement works irreparable, as opposed to reparable, harm.  And as to the "financial repercussions," plaintiffs have failed to specify or substantiate what these are, beyond the tardiness of reimbursement payments.  Furthermore, the parties' subsequent filings indicate that the DOE has reimbursed a portion of the outstanding costs and intends to reimburse the remainder of the costs upon receipt of certain documentation.  *See* Dkt. 39.  Although the Court is sympathetic to the aggravation and uncertainty that may attend untimely reimbursements, plaintiffs have not proved that they have experienced or will experience difficulties rising to the level of irreparable harm.  They therefore do not meet the standard for a preliminary injunction.  *See, e.g.*, Affirmance at *2; *Mendez*, 2022 WL 6807537, at *1 ("Because this dispute is about educational *funding*—not educational *placements*—Plaintiffs are unable to show that their harm is irreparable.").

## CONCLUSION

For the foregoing reasons, the Court denies plaintiffs' motion.  Because plaintiffs have failed to prove their entitlement to injunctive relief, the Court has no occasion to address the parties' arguments as to the disposition of the outstanding disputes over reimbursement, including whether and to what extent plaintiffs must provide substantiating invoices and/or in-

person attendance records in order to be reimbursed.  The Court directs the parties to continue

conferring in good faith and to file, by February 8, 2023, a joint status update setting forth the

remaining costs in dispute and plaintiffs' position as to whether they will seek further remedies.[5]

The Clerk of Court is respectfully directed to terminate the motions pending at dockets 4

and 17.


SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge


Dated: February 1, 2023
       New York, New York

---

[5] Plaintiffs state that the injunction sought here is "more akin to a writ of mandamus," Reply at 1 n.1, presumably referring to their bid to compel the DOE to reimburse the outstanding costs of the pendency placements.  However, given that plaintiffs did not style their motion as such, and the DOE has acknowledged and performed, at least in significant part, the obligations at issue, the Court declines to treat this motion as a writ of mandamus *sua sponte*.