UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROSA ELBA DE PAULINO, et al.,

                              Plaintiffs,

                -v-

NEW YORK CITY DEPARTMENT OF EDUCATION, et al.,

                              Defendants.

22 Civ. 1865 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

A group of 18 parents,[1] representing a total of 12 children, brought this action individually, and on behalf of their respective children (the "students"), seeking funding under the pendency or "stay-put" provision of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(j), for the educational placement of their disabled children at the International Institute for the Brain ("iBRAIN") for the 2021–2022 extended school year. Defendants, the New York City Department of Education ("DOE") and David C. Banks in his official capacity as Chancellor of DOE (collectively, "Defendants"), have not disputed that each affected student is entitled to some funding under this provision. And the parties' dispute has narrowed significantly during this litigation, such that the pending cross motions for summary judgment only concern Defendants' funding obligations as to four disabled students: O.F., A.N., A.D., and R.Z.

---

[1] These persons (collectively "Plaintiffs") are: Rosa Elba de Paulino, Cefrino Paulino, Marilyn Beckford, Lynn B. Chaperon, Neysha Cruz, Dorothy Neske, Christopher Neske, Marina Perez (Burgos Parra), Maria Hidalgo, Abundio Sanchez, Kelly Tobuck, Carolyn Mason, Maria Navarro-Carillo, Jose Garzon, Andrea Phillips, Paul Hinton, Rosa Zayas, and Edwin Zayas.

For the reasons that follow, the Court holds that the motions as to O.F. and A.D. are moot, grants Defendants' motion as to A.N., and solicits limited supplemental briefing as to R.Z.

## I.      Background

### A.      The IDEA and Its Pendency Provision

"The IDEA authorizes the disbursement of federal funds to [s]tates that develop appropriate plans to, among other things, provide a free and appropriate public education ('FAPE') to children with disabilities." *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 525 (2d Cir. 2020) (footnotes omitted). "To provide a FAPE to each student with a disability, a school district must develop an IEP [individualized education program] that is 'reasonably calculated to enable the child to receive educational benefits.'" *Id.* (quoting *T.M. ex rel A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 151 (2d Cir. 2014)). Parents in New York who wish to challenge the adequacy of their child's IEP utilize New York's two-tier system of administrative review, which entails filing an administrative due process complaint ("DPC") and requesting a hearing before an impartial hearing officer ("IHO"); and, if unsuccessful, appealing that officer's decision to a state review officer ("SRO"). *Id.* at 526; *see also* 20 U.S.C. §§ 1415(f)–(g); N.Y. Educ. Law §§ 4404(1)–(2). The parent may pursue judicial review of the SRO's decision in a state or federal trial court. *Ventura*, 959 F.3d at 526; *see also* 20 U.S.C. § 1415(i)(2)(A); N.Y. Educ. Law § 4404(3).

Relevant here, the IDEA mandates that a state "maintain the educational status quo while the parties' dispute is being resolved." *Doe v. E. Lyme Bd. Of Educ.*, 790 F.3d 440, 452 (2d Cir. 2015) (internal quotation marks omitted). Thus, under the IDEA's pendency, or "stay put," provision, a child protected under the IDEA is to remain, at public expense, in his or her "then-current educational placement" during the adjudication of proceedings conducted under the IDEA. 20 U.S.C. § 1415(j); *see also Ventura*, 959 F.3d at 526, 532. The source and scope of

the DOE's reimbursement obligations follow from the most recent operative and unappealed administrative decision—either a pendency order handed down by an IHO while the DPC is still pending, or the IHO's Finding of Fact and Decision ("FOFD") on the DPC. *See Abrams v. Carranza*, No. 19 Civ. 4175 (AJN), 2019 WL 2385561, at *1 (S.D.N.Y. June 6, 2019). "[T]he existence and extent of the DOE's reimbursement obligations turn on the language of the applicable administrative order—in particular, on the most recent, operative order, also known as the 'last pendency-setting event.'" *Davis v. Banks*, No. 22 Civ. 8184 (JMF), 2023 WL 5917659, at *4 (S.D.N.Y. Sept. 11, 2023) (quoting *Araujo v. New York Dep't of Educ.*, No. 20 Civ. 7032 (LGS), 2023 WL 5097982, at *5 (S.D.N.Y. Aug. 9, 2023)).

### B.    Factual Background

This action was brought with respect to 12 students, but the outstanding disputes concern only four students: O.F., A.N., A.D., and R.Z. *See* Dkt. 65. The Court briefly reviews the relevant facts and administrative history bearing on each student's claims.

#### 1.    O.F.: Factual Background

O.F. was age 18 at the start of the 2021–2022 extended school year. Dkt. 60 ("JSF") ¶¶ 2–3. On July 6, 2021, O.F.'s parent, Neysha Cruz, initiated a DPC seeking funding for O.F.'s placement at iBRAIN for that school year. *Id.* ¶ 4. On August 20, 2021, IHO Mitchell Regenbogen issued a pendency order requiring "funding for cost of the Student's attendance at iBRAIN for the 12-month 2021–2022 school year, including related services, and including the costs of specialized transportation with appropriate accommodations to and from iBRAIN." *Id.* ¶¶ 5–6; *id.*, Ex. 1 (O.F. Pendency Order). On March 27, 2022, IHO Regenbogen issued an FOFD, and on April 4, 2022, issued a Superseding FOFD, which required, among other things, payment for O.F.'s transportation "to and from iBRAIN" with "appropriate accommodations" including "1:1 nursing services[.]" *Id.* ¶¶ 7–9.

3

Cruz and DOE each cross-appealed IHO Regenbogen's decision.  On July 5, 2022, SRO

Justyn P. Bates issued a decision.  *Id.* ¶¶ 10–12.  On October 27, 2022, Cruz filed a federal

complaint challenging SRO Bates's findings.  *Cruz v. Banks*, No. 22 Civ. 9220 (JLR) (S.D.N.Y.

2022).

As relevant here, Cruz asserted, at the time she moved here for summary judgment, that

DOE still owed $22,790 in outstanding transportation costs pursuant to IHO Regenbogen's

operative, pendency-setting order, plus $3,120 in outstanding nursing costs, all for the 2021–

2022 school year.  *Id.* ¶¶ 15–17.

### 2.     A.N.: Factual Background

A.N. was age 11 at the start of the 2021–2022 extended school year.  *Id.* ¶ 19.  On July 8,

2021, A.N.'s parents, Dorothy and Christopher Neske, filed a DPC seeking funding for A.N.'s

placement at iBRAIN.  *Id.* ¶ 21.  On August 18, 2021, IHO Sharyn Finkelstein issued a pendency

order for A.N.  *Id.* ¶ 22.  In the order, IHO Finkelstein required DOE to "directly fund [A.N.'s]

attendance at iBrain School with the cost of related services during the 2021–2022 school

year[,]" and to "reimburse the costs of [A.N.'s] special transportation" for that year.  *Id.*, Ex. 6.

On January 23, 2022, IHO Finkelstein issued an FOFD holding that DOE had provided

A.N. a FAPE for the 2021–2022 school year.  *Id.* ¶ 24.  On March 4, 2022, A.N.'s parents

appealed this decision; DOE later cross-appealed; and, on July 5, 2022, SRO Bates issued a

decision adopting the FOFD in substantial part.  *Id.* ¶¶ 25–27.  On August 15, 2022, plaintiffs

filed a complaint in this District seeking to reverse SRO Bates's findings.  *Neske v. Banks*, No.

22 Civ. 6946 (AT) (S.D.N.Y.).

Relevant to this action to enforce the pendency order, plaintiffs, in moving for summary

judgement, contend that DOE owes $857.34 in outstanding tuition costs, and $13,500 in

outstanding transportation costs to A.N. for the 2021–2022 extended school year.  *Id.* ¶¶ 29–30.

### 3.    A.D.: Factual Background

A.D. was age 12 at the start of the 2021–2022 extended school year. *Id.* ¶ 33. On July 9,

2021, A.D.'s parent, Carolyn Mason, initiated a DPC, seeking, *inter alia*, funding for A.D.'s

placement at iBRAIN. *Id.* ¶ 34. On August 24, 2024, IHO John Farago issued a pendency order

governing the duration of the proceedings, requiring Defendants to fund placement at iBRAIN.

*Id.* ¶¶ 35–36.

On April 23, 2022, IHO Farago issued an FOFD, finding for the District; both parties

appealed. *Id.* ¶¶ 37–39. On July 1, 2022, SRO Carol H. Hauge issued a decision dismissing

both appeals. *Id.* ¶ 40. On October 31, 2022, Mason filed a federal complaint challenging SRO

Hauge's decision. *Mason v. Banks*, No. 22 Civ. 9336 (JR) (S.D.N.Y.).

Mason here seeks enforcement of the pendency order. In moving for summary judgment,

she argues that DOE owes $24,319.62 in transportation costs to A.D. for the 2021–2022 school

year. JSF ¶ 42.

### 4.    R.Z.: Factual Background

R.Z. was age 17 at the start of the 2021–2022 extended school year. *Id.* ¶ 44. On July 6,

2021, R.Z.'s parents, Rosa and Edwin Zayas, initiated a DPC seeking funding for R.Z.'s

placement at iBRAIN for the 2021–2022 school year. *Id.* ¶¶ 43, 46. On December 13, 2021,

IHO Diana Ciccone issued an order setting R.Z.'s pendency placement as that provided for in a

previous FOFD, also authored by IHO Ciccone, which governed the 2019–2020 school year. *Id.*

¶¶ 47–50; *see also id.*, Ex. 12.

On February 9, 2022, IHO Ciccone issued an FOFD for the 2021–2022 school year,

requiring DOE to pay for base tuition at iBRAIN for that year, and for related services at

specified rates. *Id.* ¶ 52. DOE appealed this order, and R.Z.'s parents cross-appealed; on April

20, 2022, SRO Bates issued a decision finding for the DOE. *Id.* ¶¶ 53–55. On August 19, 2022,

R.Z.'s parents filed an action in this District challenging SRO Bates's decision. *Zayas v. Banks*, No. 22 Civ. 7112 (KPF) (S.D.N.Y.).

In this action, the Zayases move for summary judgment, arguing that DOE owes $3,452.39 in outstanding tuition costs, $93,740 in outstanding transportation costs, and $200,720 in outstanding nursing costs for R.Z. for the 2021–2022 school year. *Id.* ¶¶ 57–59.

**C.    Procedural History**

Plaintiffs filed the instant action on March 4, 2022, seeking injunctive relief and damages. Dkt. 1. The same day, Plaintiffs moved for a preliminary injunction to require the DOE to immediately fund the students' pendency placements for the 2021–2022 extended school year. Dkts. 4, 5. On February 1, 2023, after various extensions and updates reporting additional payments processed by DOE, the Court denied the motion, finding that Plaintiffs had failed to allege irreparable harm. Dkt. 40 at 7. Thereafter, the parties continued to attempt to resolve the limited outstanding issues in the case, reporting in a series of filings the remaining open issues. *See* Dkts. 41, 43, 45, 46, 50, 54.

On January 19, 2024, the Court scheduled a pre-motion conference in anticipation of summary judgment motions to address the outstanding claims. Dkt. 55. Following the briefing schedule set at that conference, on February 9, 2024, the parties filed joint stipulated facts, plus attached exhibits. Dkt. 60. On March 1, 2024, Plaintiffs filed a motion for summary judgment and a memorandum of law in support. Dkts. 64, 65 ("Pl. Br."). On March 15, 2024, Defendants filed a cross-motion for summary judgment, and a memorandum of law and declaration in support. Dkts. 66, 67, 68 ("Def. Br."). On April 5, 2024, Plaintiffs filed a memorandum of law in opposition to Defendants' cross-motion, and an accompanying declaration. Dkts. 72, 73 ("Pl. Resp. Br."). On April 19, 2024, Defendants filed a reply and a declaration in support. Dkts. 74

("Def. Reply Br."). On May 13, 2024, after receiving leave to do so, Plaintiffs filed a sur-reply brief. Dkt. 80 ("Pl. Sur-Reply Br.").

## II.    Applicable Legal Standards

Summary judgment in the context of an IDEA case "'involves more than looking into disputed issues of fact; rather, it is a pragmatic procedural mechanism for reviewing administrative decisions.'" *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 184 (2d Cir. 2012) (quoting *A.C. ex rel. M.C. v. Bd. of Educ.*, 553 F.3d 165, 171 (2d Cir. 2009)). The "inquiry is a results-based standard in many respects, concerned more with a just outcome for a disabled student than with judicial efficiency." *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009). Although the "district court must base its decision on the preponderance of the evidence," it ultimately must "give due weight to the administrative proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *A.C.*, 553 F.3d at 171 (cleaned up). To this end, "[a] court may remand a proceeding when it needs further clarification or does not have sufficient guidance from the administrative agencies." *Hidalgo v. N.Y.C. Dep't of Educ.*, No. 20 Civ. 98 (JGK), 2021 WL 2827037, at *5 (S.D.N.Y. July 7, 2021).

## III.    Discussion

The parties dispute the scope and status of Defendants' pendency funding obligations as to four students.

### A.    O.F. and A.D.

From the parties' filings in conjunction with cross-motions for summary judgment, it appears that DOE has now made all payments claimed for O.F. and A.D.

With respect to O.F., the parties stated in the JSF that the payments still at issue were (1) $22,790 in transportation costs, covering invoiced transportation costs for April, May, and June

2022, and (2) $3,120 in nursing costs from May 2022. JSF ¶¶ 15–17. Defendants have since represented that, on March 14, 2024, they processed a payment for O.F. in the amount of $22,790 for April, May, and June transportation costs "[f]ollowing a review of the transportation invoices submitted on behalf of O.F." Dkt. 68 ("Kapoor Decl.") ¶ 8. The same day, the DOE further represented, it processed a payment for $3,120 for O.F.'s May 2022 nursing costs, after receiving a corrected invoice for May 2022 nursing services. *Id.* ¶ 9. These representations, which Plaintiffs do not dispute, reflect that Defendants have made good on the outstanding pendency costs for O.F. claimed in this litigation.

With respect to A.D., Plaintiffs seek $24,319.62 in transportation costs for May and June 2022 on summary judgment. JSF ¶ 42. Defendants now represent that, on March 13, 2024, they processed a payment in this sum for A.D.'s May and June 2022 transportation costs. Kapoor Decl. ¶ 11. This representation clears away any outstanding claims on behalf of A.D.

Plaintiffs' response brief does not meaningfully put that representation at issue. Plaintiffs reiterate that they had been notified by Sisters Transportation Services "that A.D. has an outstanding balance of $24,319.62 for the 2021–2022 school year." Pl. Resp. Br. at 11. But it does not place that communication in time, let alone controvert Defendants' assertion that the May and June 2022 payments were processed this March. *See id.* Plaintiff's observation that there had been an "extensive delay" in executing these payments, if anything, appears implicitly to acknowledge the fact of an eventual payment. *Id.*[2]

---

[2] The delay in reimbursing the parents does not give rise to a viable claim in this litigation, as there is no claim that the delay in reimbursement payments ever interfered with the statutory guarantee of a FAPE for the affected students for the 2021–2022 school year. *See* Dkt. 40 at 10–11 (addressing legal principles governing such claims).

Thus, the disputes in this lawsuit as to outstanding funds sought on behalf of O.F. and A.D. have now been mooted by payments from DOE.

**B.    A.N.**

The sole remaining dispute as to A.N. is narrow: whether the period for which Defendants became accountable for tuition and transportation costs for the 2021–2022 school year began on July 7, 2021 or on July 8, 2021. It is undisputed that defendants have already paid all such costs accrued on or after July 8, 2021.[3] Kapoor Decl. ¶ 10. Plaintiffs argue that costs should be keyed to the start of the school year implicated by the pendency order, and note that the 2021–2022 year began on July 7, 2021. Pl. Resp. Br. at 8–10. Defendants counter that obligations under the IDEA's stay-put provision are triggered on the day the DPC is filed, in this case July 8, 2021. Def. Br. at 6. Defendants have the better of the argument.

The Second Circuit has held that "the [stay-put] statute is clear that the [agency's] obligation to provide stay-put services [is] not triggered until the Parent's administrative complaint [is] filed." *Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440, 456 (2d Cir. 2015). That is because the "provision governs the obligations of parties during 'the pendency of any *proceedings* conducted pursuant to *this section*,' and the word 'proceeding' is used in § 1415 exclusively to describe administrative due process proceedings and judicial actions[.]" *Id.* at 455 (quoting 20 U.S.C. § 1415 (emphasis added)) (internal citations omitted)). In other words, the

---

[3] This dispute appears to concern $750 in transportation costs and $857.34 in tuition costs. Although the parties' submissions have been less than clear on this point, plaintiffs appear to claim $13,500 in transportation costs dating back to July 7, 2021, whereas defendants represent without contradiction that they have paid $12,750 in such costs pro-rated for the period beginning July 8, 2021. The record does not elucidate why the daily cost of A.N.'s transportation was $750. The record is also opaque with respect to the $857.34 figure for one day of tuition costs, although plaintiffs maintain that this outstanding amount represents "tuition costs for July 7, 2021[.]" Pl. Resp. Br. at 8.

genesis of a *pendency* obligation is the *pendency* of a proceeding—either a Due Process Complaint or judicial proceedings.

Here, A.N.'s DPC was emailed to the Impartial Hearing Office at 6:57 p.m. on July 7, 2021. Kapoor Decl. ¶ 10; *id.*, Ex. 2 (email submitting DPC). Impartial Hearing Office rules state that complaints received outside of business hours (after 5 p.m.) will not be deemed filed until the next business day. *Id.* Thus, the DPC was deemed filed on July 8, 2021. Because July 8, 2021, marks the day that the due process proceedings commenced, DOE's pendency obligations likewise began that day.

Plaintiffs alternatively argue that the date the DPC was filed should not control, and that, even if it does, the Court should deem A.N.'s DPC filed on July 7, 2021. These arguments fail.

As to the first, plaintiffs are wrong to declare that pendency should "apply retroactively to the start of the school year." Pl. Resp. Br. at 9. Ignoring the controlling Second Circuit authority above, they rely on a single district court precedent: *Spilsbury v. District of Columbia*, 307 F. Supp. 2d 22 (D.D.C. 2004). And even if that out-of-circuit precedent governed this case, *Spilsbury* does not stand for the proposition Plaintiffs require: that all pendency obligations are retroactive to the start of the relevant school year. *Cf.* Pl. Resp. Br. at 9–10. *Spilsbury* instead rejected a school district's claim that a proposed change in educational placement developed but not implemented before the start of a school year could set the student's then-current educational placement for pendency purposes while the proposal was being challenged in a DPC. *Spilsbury*, 307 F. Supp. 2d at 25–26. *Spilsbury* thus addressed *what* a student's educational placement is for pendency purposes, not *whether* pendency funding obligations are retroactive after being triggered.

As to the second point, A.N.'s DPC was properly treated as filed on July 8, 2021. Plaintiffs imply that the IHO, who treated July 8, 2021, as the effective date of the pendency order, must have made a clerical error, noting that July 7, 2021, is the date affixed to the DPC itself. Pl. Resp. Br. at 9; *see also* JSF, Ex. 6 at 3 (IHO Finkelstein stating that pendency order "shall remain in effect from July 8, 2021, which is the date of the filing of the due process request"). But the facts do not support the claim of a clerical error, as opposed to the IHO's having treated A.N.'s after-hours filing as filed the following day, pursuant to governing office rules. *See* Kapoor Decl. ¶ 10; *cf. A.C.*, 553 F.3d at 171 (courts must give "due weight" to administrative proceedings in reviewing IDEA challenges).

Defendants have thus established that the due process proceedings here commenced on the filing of the DPC on July 8, 2021, and that DOE's pendency obligations run from that date. Because Defendants have undisputedly, fully paid out claims for A.N.'s tuition and transportation for the 2021–2022 school year starting on that date, the Court grants summary judgment to Defendants on A.N.'s claims.

## C.    R.Z.

There are two outstanding disputes with respect to R.Z.: (1) whether R.Z. is entitled to an additional $3,452.39 in tuition costs for the 2021–2022 school year, and (2) whether R.Z.'s operative pendency order provides for nursing and certain transportation costs, or just tuition costs.

### 1.    Outstanding Tuition Costs

Based on the parties' filings, the Court cannot reliably determine whether Defendants owe $3,452.39 in tuition costs for the 2021–2022 school year. Plaintiffs argue that there is an outstanding balance in that amount. *See* Pl. Resp. Br. at 12. In support, they produce an affidavit setting forth R.Z.'s tuition costs for the 2021–2022 school year at iBRAIN: $163,000 in

base tuition, and $91,936 in supplemental tuition, which covers occupational therapy, physical therapy, speech language therapy, vision education services, music therapy, assistive technology service, and parent counseling and training. JSF, Ex. 14. As to where the $3,452.39 claimed derives from, Plaintiffs state that their tuition affidavit documenting the "total amount owed" must be heeded, because "DOE cannot argue that the burden is on the parents to document how much DOE itself has paid." Pl. Sur-Reply Br. at 6. DOE, for its part, represents that, as of March 14, 2023, it had paid out $187,090.12 in tuition costs for R.Z., which it understands to be the full amount owed. Kapoor Decl. ¶ 12. It states that it does not have any documentation consistent with Plaintiff's claim of an outstanding tuition balance of $3,452.39. *Id.*

The parties' submissions leave the Court unable to resolve how much—if any—money DOE owes for R.Z.'s tuition for the 2021–2022 school year. These submissions talk past each other. Plaintiffs make the ipse dixit claim that there is a $3,452.39 deficit, but maddeningly fail to show their arithmetic and its underlying documentary support. As for DOE's assertion that it has paid the full tuition amount of $187,090.12, it does not explain the basis on which it tabulates that sum as the full amount due. This dispute, as Plaintiffs note, boils down to a "simple mathematical equation[.]" Pl. Sur-Reply Br. at 6. The Court accordingly will order expedited submissions to elucidate this point.

### 2.    Nursing and Transportation Costs

The parties also dispute whether Defendants owe R.Z. any nursing or transportation costs for the 2021–2022 school year. This dispute ultimately concerns the language of the operative pendency order, issued on December 13, 2021. JSF, Ex. 12 ("12/13/21 Pendency Order"). Defendants claim that the pendency order only provides for tuition at iBRAIN. Def. Br. at 7. Plaintiffs counter that the pendency order incorporates by reference a November 9, 2021 FOFD,

which provides for transportation and nursing services as part of R.Z.'s educational placement.
Pl. Resp. Br. at 22–23; *see also* 12/13/21 Pendency Order at 4; JSF, Ex. 13 ("11/9/21 FOFD").

The parties agree that the operative administrative order is the pendency order from IHO
Ciccone issued on December 13, 2021. There, IHO Ciccone found that R.Z.'s "'pendency'
placement is that awarded in the [IHO]'s decision dated November 9, 2021 which was not
appealed to the [SRO], or otherwise overturned." 12/13/21 Pendency Order at 4. IHO Ciccone
thus ordered that "a) pending resolution of this hearing, and retroactive to October 7, 2021 (the
date of the hearing request), the department of education shall, fund the tuition at iBRAIN[.]" *Id.*

The November 9, 2021 FOFD to which IHO Ciccone referred in the December 13, 2021
pendency order (both of which Ciccone authored) provided as follows:

> IT IS THEREFORE ORDERED THAT: a). The DOE to pay the tuition and
> transportation costs for the STUDENT's attendance at the PRIVATE SCHOOL
> from March 2020 to June 2021. b). The DOE pay for the related services provided
> and received to the STUDENT at the PRIVATE SCHOOL from March 2020 to
> June 2021. c) a bank of 540 hours of Occupational therapy; 540 hours of physical
> therapy; 360 hours of speech/language therapy; 360 hours of Vision Education
> Services and 180 hours of Assistive technology.

11/9/21 FOFD at 28.

Considering the text of these decisions, the pendency order is best read to order not
merely that R.Z. remain at iBRAIN, but also that the DOE fund the costs and services associated
with placement at iBRAIN discussed in the November 9, 2021 FOFD. As IHO Ciccone stated in
the pendency order, an "un-appealed hearing officer's determination [of disputed issues with
respect to an IEP] may then constitute the student's 'pendent' placement during the course of a
subsequent proceeding." 12/31/21 Pendency Dec. at 4. The pendency order's cross-reference to
the November 9, 2021 FOFD to determine the pendency placement thus incorporates the terms
of the FOFD, including requiring the provision of transportation and other services and costs.

*See Davis*, 2023 WL 5917659, at *4 n.4 (deciding pendency dispute based on language in an FOFD cross-referenced in pendency order). As the November 9, 2021 FOFD dealt at length with the specific DOE-funded services R.Z. was to receive at iBRAIN, including nursing and transportation, it is most persuasive to read IHO Ciccone as obliging DOE to pay for these services, and not merely tuition expenses. *See* 11/9/21 FOFD at 28 (ordering DOE to fund tuition, transportation costs, and related services provided and received to R.Z. at iBRAIN from March 2020 to June 2021); *id.* at 10 (noting that R.Z. received at iBRAIN, starting in March 2020, services such as a "1:1 nurse and 1:1 paraprofessional all day" and "special transportation accommodations"). This reading accords with caselaw interpreting a pendency "placement" to encompass not only the school at which a student will remain, but also associated services. *See, e.g., T.M.*, 752 F.3d at 171 (term "educational placement" refers to "the general type of educational program in which the child is place[d]." (quoting *Concerned Parents & Citizens for the Cont. Educ. at Malcolm X (PS 79) v. N.Y.C. Bd. of Educ.*, 629 F.2d 751, 753 (2d Cir. 1980)); *Ventura de Paulino*, 959 F.3d at 533–34 (discussing educational "placement" and educational "program" interchangeably as including the "level and type of services" offered disabled child). Thus, when IHO Ciccone found that R.Z.'s pendency placement was that awarded in the November 9, 2021 FOFD, she incorporated both the school (iBRAIN) and the related services (including transportation and nursing) as elements of an educational "placement."

To be sure, IHO Ciccone thereafter ordered the DOE to "fund the tuition at iBRAIN," without explicitly spelling out at that point a requirement to fund related services. 11/9/21 Pendency Order at 4. But earlier in the decision, IHO Ciccone, in recapping the November 9, 2021 FOFD, described it as having "order[ed] the department to fund tuition at the iBRAIN school." *Id.* at 2. And the November 9, 2021 FOFD explicitly (and undisputedly) required the

14

DOE to fund nursing and transportation services as well as base tuition at iBRAIN. 11/9/21 FOFD at 28. Thus, IHO Ciccone's ultimate directive in the pendency order to "fund the tuition at iBRAIN" does not negate her references incorporating the November 9, 2021 FOFD, and the related services for which it provided. The Court therefore holds that R.Z.'s operative pendency order for the 2021–2022 school year requires the DOE to fund R.Z.'s educational placement as fully described in the November 9, 2021 FOFD—including nursing and transportation services.

Because the DOE has heretofore disputed its pendency obligation to pay any nursing or transportation costs for R.Z.'s 2021–2022 school year, it is unclear whether the parties agree on the dollar amount of those costs. The Court directs the parties to promptly meet and confer on that point and expects that the parties will promptly be able to reach agreement on it. But the Court will also set an expedited briefing schedule to cover the circumstance in which they cannot. The parties' briefing should address, *inter alia*, whether, based on the language of the November 9, 2021 FOFD as incorporated into the December 13, 2021 Pendency Order, the DOE is required to reimburse R.Z. for all transportation costs incurred or only for transportation costs on days in which R.Z. actually attended school at iBRAIN.

## CONCLUSION

For the foregoing reasons, the Court (1) denies the the summary judgment motions as to O.F. and A.D. as moot; (2) grants Defendants' summary judgment motion as to A.N.; and (3) orders limited supplemental briefing as to R.Z.

Specifically, as to R.Z., the parties should address in short letter-motions, not to exceed five pages in length: (1) how much, if any, tuition is owed for R.Z. for the 2021–2022 school year, and attach full documentation as to the basis for that calculation; the parties may explain this documentation in attached declaration(s); and (2) what nursing and transportation costs are owed to R.Z. based on the language of the November 9, 2021 FOFD, as incorporated in the

December 13, 2021 Pendency Order, and whether, based on the language in the FOFD,

Defendants' obligation as to transportation costs is limited to days of actual attendance.

The Court expects the parties to meet and confer on these issues **urgently**, with an eye

towards fully resolving these disputes.  In the event that disputes remain, Plaintiffs' letter-motion

shall be due **July 2, 2024** and Defendants' letter-motion shall be due **July 9, 2024**.  The Court

does not invite replies.  The parties are advised that the Court **will not** extend these deadlines.

Upon receipt of these letters, the Court will promptly resolve the outstanding issues in this case.

SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge

Dated: June 18, 2024
New York, New York